UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AUDREY SETTJE,

                    Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

Case No. 3:11-cv-05215BHS-KLS

REPORT AND RECOMMENDATION

Noted for January 27, 2012

       Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits. This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

       On May 31, 2007, plaintiff filed an application for disability insurance and another one

for SSI benefits, alleging disability as of October 31, 2005, due to back problems, acid reflux and

carpal tunnel syndrome in her right arm. See Administrative Record ("AR") 10, 88. Both

applications were denied upon initial administrative review and on reconsideration. See AR 10,

REPORT AND RECOMMENDATION - 1

57, 66.  A hearing was held before an administrative law judge ("ALJ") on July 23, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 37-52.

On September 22, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled.  See AR 10-21.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 21, 2011, making the ALJ's decision defendant's final decision.  See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On March 21, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  See ECF #1-#3. The administrative record was filed with the Court on July 12, 2011.  See ECF #13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing her residual functional capacity; and (4) in finding her to be capable of performing other work existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore that defendant's decision to deny benefits should be reversed.  However, for the reasons set forth below, the undersigned recommends that this matter should be remanded to defendant for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Kim

Plaintiff challenges the following findings the ALJ made:

In February of 2007, the claimant's physician, Edward Kim, M.D., noted that the claimant's back impairment caused some physical limitations with regard

REPORT AND RECOMMENDATION - 4

to her ability to sustain work activities.  She [sic] opined that the claimant should not lift above 20 pounds or stand more than 20 minutes.  In addition, although he noted that the claimant could do light work activity, he also indicated that she be limited to working no more than one to ten hours per week (Ex. 3F).  Dr. Kim's assessment is inherently contradictory and unsupported by the objective evidence of record.  For example, although he stated that the claimant could do light work he added that she should not work more than 10 hours per week.  Without that limitation to time work, his assessment is consistent with the evidence of record.  Furthermore, objective findings in the record indicate that the claimant has a mild disc bulging at the lumbar spine, but all other images were within normal limits and range of motion testing noted few limitations.  For these reasons, the opinion of Dr. Kim was given limited weight, to the extent that it is supported by the medical evidence of record and it is consistent with the residual functional capacity outlined [in the ALJ's decision].

AR 18.  Plaintiff argues, and the undersigned agrees, that there is no inherent contradiction between the ability to perform light work activity and the ability to do so for no more than ten hours per week.  That is, the limitation to light work indicates the maximum exertional level of work Dr. Kim felt plaintiff was capable of performing,[1] whereas the limitation to no more than ten hours per work was how long he felt she could perform at that level.  In other words, it is entirely consistent to find an individual can perform at a light level of work, but is able to do so for only a limited amount of time per week.  To that extent, the ALJ erred.

On the other hand, the undersigned finds no error in the ALJ discounting the opinion of Dr. Kim on the basis that it is not supported by objective clinical findings.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimants capabilities constitutes clear and convincing reason for not relying on that assessment); Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings).  As the ALJ noted, the objective findings contained

---

[1] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b), § 416.969a(b).

REPORT AND RECOMMENDATION - 5

in the record fail to support the restriction to performing light work for no more than ten hours per week. See AR 187, 199, 202, 255, 257, 259-61, 288-91, 301, 304, 310-11, 313-14, 316, 318-19, 323, 326, 331, 335-36, 358, 362, 390-95, 401, 403, 408-09, 431, 492-94, 503, 506-10, 512, 516-19, 521, 523-25, 528-32, 534-36.

B.    Dr. Hoskins

Plaintiff challenges as well the following findings made by the ALJ:

> In September of 2007, Robert Hoskins, M.D., [a non-examining, consultative physician] employed by the State Disability Determination Services (DDS), reviewed the medical evidence of record and prior DDS assessment of the claimant's physical abilities and limitations. Dr. Hoskins affirmed the finding that the claimant's back impairment and carpal tunnel syndrome causes some functional limitations that limited her to light work activities (Ex. 8F; 17F). This assessment is based on a thorough and objective review of the medical evidence of record and it is well supported by that evidence. Furthermore, additional records obtained after September of 2007 do not show that the claimant's impairment is any more severe or that she has any more significant limitations. Therefore, great weight was given to the opinions of Dr. Hoskins.

AR 17. Plaintiff argues it was error for the ALJ to rely on the opinion of Dr. Hoskins, because it may constitute substantial evidence only if it is consistent with other independent evidence in the record. But as discussed above, the weight of the objective medical evidence in the record does not support greater physical functional limitations than the limitation to light work activity found by Dr. Kim, and accordingly by Dr. Hoskins here as well.

Plaintiff goes on to argue Dr. Hoskins did not review any medical evidence in the record that would have given him greater insight into her physical condition than possessed by Dr. Kim. The record, however, contains additional clinical findings dated subsequent to the February 2007 opinion of Dr. Kim, but prior to the September 2007 opinion of Dr. Hoskins, which support the findings of both Dr. Hoskins and the ALJ. See AR 292, 390-93, 408-09. Therefore, the ALJ did not err in placing more weight on the opinion of Dr. Hoskins than that of Dr. Kim.

REPORT AND RECOMMENDATION - 6

C.    Dr. Schneider

In regard to the objective medical evidence in the record concerning mental impairments

and limitations, the ALJ found in relevant part:

> . . . [T]here is no objective medial [sic] evidence to show that [plaintiff's post traumatic stress disorder ("PTSD") is] more than transient or that [it] cause[s] significant vocational limitations.
>
> . . . [S]pecifically, the claimant reported that she was the victim of a cult. She had been sexually abused as a child, and she reported seeing children murdered or commit suicide, and she said a cousin disappeared. Despite these reportedly traumatic experiences, the claimant reported she no longer had nightmares, and she denied visions of abuse and startle reactions, which would suggest post traumatic stress disorder (Ex. 19F). There is little objective evidence to support a diagnosis of PTSD, and, in fact, the claimant's reported history of abuse and involvement in a cult would further support the diagnosis of personality disorder, as opposed to PTSD. Her claims of trauma are markedly exaggerated and extremely unlikely.
>
> Accordingly, the undersigned finds that th[is] impairment[ is] non-severe.
>
> . . .
>
> . . . Vincent Gollogly, Ph.D.[,] reviewed the claimant's record on behalf of DDS in September of 2007. Dr. Gollogly concluded that the claimant's severe impairments included major depressive disorder, and PTSD. He also opined that these impairments caused mild limitations in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Functionally, Dr. Gollogly indicated that the claimant would be capable of simple and repetitive tasks, as well as more complex tasks, accepting instructions from supervisors with limited contact with co-workers and the general public, and she would do best in a stable and structured environment (Ex. 15F; 16F). Dr. Gollogly's assessment is based primarily up on the evaluation of Dr. [Robert E.] Schneider[, Ph.D.], which is discussed in greater detail below. As explained below, there is little objective evidence to support the claimant's allegations of PTSD, as that diagnosis was made in reliance on the claimant's subjective self-report. Therefore, because Dr. Gollogly relied upon a determination which the undersigned finds is not entirely valid, little weight was given to Dr. Gollogly's assessment with regard to PTSD as a severe impairment, as well as associated limitations. However, great weight was given to Dr. Gollogly's assessment regarding major depressive disorder and associated functional limitations, as they are supported by the evidence of record.

. . .

The claimant underwent a psychological evaluation with [Dr.] Schneider . . . in July of 2007. Although Dr. Schneider did not provide a specific analysis of the claimant's mental abilities and limitations with regard to work activities, he did note that certain limitations would be beneficial for the claimant in a work environment. First, he noted that the claimant responded very well to structure and opined that she would benefit from working as it would provide a focus, diversion, and a sense of purpose (Ex. 19F/9). In addition, testing showed that the claimant was capable of acquiring computer skill [sic] and performing complex applied vocational activities (Ex. 19F/9). These specific limitations are consistent with the claimant's functioning and demonstrate that the claimant's functioning significantly improves with certain environments. This aspect of Dr. Schneider's assessment was subsequently given great weight.

Despite these abilities, Dr. Schneider assigned the claimant a global assessment of functioning (GAF) score of 44, which is indicative of serious psychological symptoms or serious impairment in social, occupational, or school functioning.[2] Such significant limitation in functioning is not supported by the record of evidence. In fact, at that evaluation, the claimant reported she had not received any psychiatric treatment or medications. Furthermore, it would appear that this GAF score is based primarily on the claimant's self-report of symptoms, including her report that she was a cult victim. Because [Dr.] Schneider's assessment is based primarily on the claimant's subjective self-report, and unsubstantiated by objective findings in the record, very little weight was given to Dr. Schneider's conclusion.

AR. 14, 17-18.

Plaintiff argues the ALJ erred in finding the evidence in the record provides more support for a diagnosis of a personality disorder than for one of PTSD. The undersigned agrees that in so finding, the ALJ improperly acted as his own medical expert. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute his or

---

2 A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As noted by the ALJ, "[a] GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

her own opinion for physician's); <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); <u>Whitney v. Schweiker</u>, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective findings without supporting medical expert testimony); <u>Gober v. Mathews</u>, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

Although the ALJ found little objective evidence of PTSD in the record and the diagnosis thereof to be based primarily on plaintiff's own subjective complaints, the evidence in the record indicates otherwise. While is true that Dr. Schneider based his diagnosis in part on plaintiff own self-report (<u>see</u> AR 483), he also performed a mental status examination – that included his own observations – and psychological testing, both of which supported the diagnoses provided (<u>see</u> AR 479-86). <u>See</u> <u>Sanchez v. Apfel</u>, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (medical evidence of mental impairment "may consist of the diagnoses and observations of professionals trained in the field of psychopathology." (quoting <u>Christensen v. Bowen</u>, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); <u>see also</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); <u>Clester v. Apfel</u>, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for psychiatric disorder diagnosis, just as results of physical examination provide basis for diagnosis of physical illness or injury).

The ALJ points to no objective medical evidence in the record that calls into question Dr. Schneider's own findings and opinions. Rather, as noted above, the ALJ appears to merely have substituted his own lay opinion therefor. Nevertheless, the undersigned finds the ALJ's error in doing so to be harmless here. <u>Stout v. Commissioner, Social Security Admin.</u>, 454 F.3d 1050,

REPORT AND RECOMMENDATION - 9

1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). This is because none of the mental functional limitations adopted by the ALJ are inconsistent with the assessments provided by Drs. Gollogly and Schneider. For example, the ALJ's determination that plaintiff could perform simple, repetitive tasks, with only occasional interaction with co-workers and no contact with the general public, is fully consistent with Dr. Gollogly's functional assessment, and – at least in regard to public contact – even more restrictive. See AR 16, 455.

In addition, as pointed out by the ALJ, Dr. Schneider "did not provide a specific analysis of [plaintiff's] mental abilities and limitations with regard to work activities." AR 18. But also as noted by the ALJ, Dr. Schneider did opine that plaintiff would actually benefit from working, finding specifically in relevant part as follows:

> She responded well to structure. . . . [I]t was as if she were a different person when she was provided with the structure of the testing. She said that she could go to work and it does appear that she would benefit from going to work since it would provide a focus and diversion and a sense of purpose. The extreme fragilness [sic] that was seen during the interview had initially suggested that she is not capable of working but she responded so well to structure that it appears that this would be a great benefit to her and would help her regain a sense of self and self-esteem. It would probably help in her interactions with her children. . . .

AR 485. Dr. Schneider thus "recommended that career development proceed concurrently with psychological and psychiatric treatment." Id. Indeed, the results of the psychological testing Dr. Schneider performed revealed:

> . . . [A] bright individual. She scored at the higher end of the average range of intelligence . . . Visual motor and visual spatial abilities are excellent. She demonstrates excellent non-verbal deductive reasoning. Her visual spatial skills are excellent and she is able to visualize relatively complex spatial configurations and to work with those in her mind. She is capable of a very high level [of] work with spatial tasks. She is capable of relatively complex computer assisted design and planning.

REPORT AND RECOMMENDATION - 10

Visual motor skills are also excellent. She learns quickly, is a flexible problem solver, learns from her experience and is very organized when approaching problems. Her applied skills are excellent and she is capable of working with her hands and performing a wide range of complex and applied vocational activities. She also demonstrates excellent non-verbal deductive reasoning.

Verbal intellectual abilities are average. . . . [H]er thinking tends to be inefficient and often confused but it appears that she can understand explanations and can benefit from feedback and helpful questioning. . . .

AR. 484. Although Dr. Schneider opined that plaintiff was "not a good candidate for a job that requires complex reasoning and intellectual decision making," he still found she presented "with many career options," commenting further in relevant part that:

. . . She has already earned a degree in printing technology. She states that she has good computer skills. Performance on testing is very consistent with self-report and suggests that she is capable of acquiring relatively complex computer skills and of performing complex applied vocational activities. Exploration of computer applications is recommended.

AR 484-85. In many ways, therefore, Dr. Schneider's opinion concerning plaintiff's ability to perform work-related activities was much less restrictive than the mental functional limitations assessed by the ALJ himself.

It is true that, as noted above, Dr. Schneider assessed plaintiff with a GAF score of 44, indicating the presence of serious psychological symptoms or of a serious impairment in social, occupational, or school functioning. But plaintiff has not challenged the ALJ's rejection of this GAF score. Further, while a GAF score may be "of considerable help" to the ALJ in assessing a claimant's residual functional capacity, "it is not essential" to the accuracy thereof. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Thus, the mere fact that a low GAF score may have been assessed by a medical source is not in itself sufficient to establish disability. In addition, as pointed out by the ALJ, the "significant limitation" the low GAF score

REPORT AND RECOMMENDATION - 11

represents "is not supported by the record of evidence," including Dr. Schneider's own narrative findings and conclusions. AR 18.

Plaintiff argues the ALJ should have further developed the record here, by obtaining the records of the visits she reported having had with a treating psychologist or by obtaining further expert medical opinion evidence. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). But it is only where the record contains "[a]mbiguous evidence", or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Plaintiff has not shown that the record is ambiguous here, or that it is inadequate to allow for proper evaluation of the evidence such that a consultative evaluation is needed. Nor has plaintiff shown what relevant evidence, if any, the records from her treating psychiatrist would provide on the issue of her mental functional ability to perform work-related activities, to the extent that such records in fact do exist.

D.    Plaintiff's Allergies

In late December 2006, plaintiff was diagnosed with a "[g]eneralized allergic reaction" in the emergency room, although this diagnosis was later doubted. AR 242, 251. In early January 2007, she was assessed "with multiple possible allergies." AR 298. Later that month, plaintiff was found to have had an allergic reaction to a body spray or other chemical irritant to which she reported having been exposed. See AR 199, 202; see also AR 436, 439. Testing results obtained in mid-August 2007, following "a severe allergic reaction" she experienced a few weeks prior thereto, were "consistent with her history of reaction to rubber, leather, and adhesives." AR 442, 444. The "best guess" at the time was that the reaction was formaldehyde in a disinfectant. AR

445. She was told to "strictly avoid all products containing the chemicals she is allergic to." AR 442. In early September 2007, Dr. Hoskins found plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and the like. <u>See</u> AR 423.

Despite this evidence of allergic reactions in the record and the environmental limitations assessed by Dr. Hoskins, the ALJ did not adopt any such limitations or explain why he declined to do so. Indeed, no mention of the above evidence appears anywhere in the ALJ's decision. In addition, plaintiff's allergic reactions and assessed inability to tolerate concentrated exposures to fumes, odors, dusts gases, poor ventilation, and the like – as well as the explicit instruction that she "strictly avoid" all products containing the chemicals to which she is allergic – is significant probative evidence the ALJ was required to consider and state why or why not he was adopting it. Defendant argues the opinion of Andrew Sheppert, M.D., in April 2007, showed she suffered from vasomotor rhinitis and not allergies. <u>See</u> AR 355.

But while that treatment note indicated skin testing plaintiff had done was negative for allergies, other medical records – including those dated subsequent to this note discussed above – revealed the presence of severe allergic reactions. Defendant goes on to argue that the jobs the vocational expert identified that plaintiff could perform (i.e., cannery worker, garment sorter and housekeeper), have not been shown by plaintiff to require any interaction with the chemicals to which she is allegedly allergic. <u>See</u> AR 50-51. But, as discussed in greater detail below, the determination as to whether plaintiff has the ability to perform the above jobs is made at step five of the sequential disability evaluation process,[3] where defendant has the burden of proof. In any

---

[3] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See</u> <u>id.</u> If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).

event, as is also discussed in greater detail below, it is reasonable to assume that there is a strong possibility, if not a substantial likelihood, that if plaintiff were to perform those jobs she would be exposed to those things, such as rubber, leather, adhesives, and/or formaldehyde, with respect to all of which she has been shown to experience a severe allergic reaction.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

As noted above, the ALJ determined that plaintiff's "claims of trauma" were "markedly exaggerated and extremely unlikely," and that her "reported history of abuse and involvement in a cult" were more supportive of a diagnosis of personality disorder than that of PTSD. AR 14. As also discussed above, however, the ALJ did not point to any medical evidence in the record that called into question the PTSD diagnosis, and improperly substituted his own lay opinion for those of Drs. Gollogly and Schneider. Nor did the ALJ state the basis for, or cite to any evidence in the record to support, his statement that plaintiff had markedly exaggerated her trauma claims or that they were extremely unlikely.[4] As such, the ALJ erred here.

The ALJ also discounted plaintiff's credibility in part for the following reason:

> In explaining how her activities are limited . . . , the claimant noted that she could occasionally lift 20 pounds and frequently lift 10 pounds, stand for 20 minutes at a time, and walk for about 20 to 40 minutes at a time (Ex. 3E/2-3). These activities are generally consistent with the residual functional capacity to perform light work activities, and within the parameters of the residual functional capacity outlined in this decision. Therefore, according to the claimant's own statements, she would be capable of sustaining work activities.

AR 17.[5] The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict

---

[4] Defendant argues the fact that Dr. Schneider diagnosed plaintiff with a personality disorder, supports the finding of the ALJ that that disorder led her to exaggerate and embellish her symptoms. But as plaintiff notes, Dr. Schneider stated that he "deferred" his diagnosis of personality disorder, although he did find she exhibited "hysterical and borderline personality features." AR 486. In any event, Dr. Schneider did not opine or otherwise indicate that such features led plaintiff to exaggerate or embellish her symptoms, nor in fact did the ALJ actually do so, noting instead that her reported history of abuse and cult involvement further supported the personality disorder diagnosis. See AR 14, 477-86. Just because plaintiff may have received a personality disorder or other similar diagnosis, furthermore, this does not alone support a finding that such a diagnosis resulted in exaggeration or embellishment, without at least some objective medical evidence that the two are linked. No such evidence has been presented here.

[5] See also AR 15 (finding plaintiff had only mild restriction in activities of daily living, noting that she has reported being able to cook, shop, do laundry, and manage money).

REPORT AND RECOMMENDATION - 15

his [or her] other testimony." <u>Id.</u>  Under the first ground, a claimant's credibility may be rejected if he or she can spend "a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." <u>Smolen</u>, 80 F.3d at 1284 n.7.

As plaintiff notes, her self-reports concerning standing, walking and other work-related activities, do not clearly establish she can perform at the light work level.  For example, plaintiff reported she could perform housework for only five to ten minutes at a time, followed by a need to rest for a period of five to 20 minutes. <u>See</u> AR 103; <u>see also</u> AR 127 (reporting being able to perform housework for 10 to 15 minutes, with 15 to 30 minutes of rest in between).  She also reported that it occasionally took her 15 to 20 minutes to walk 10 to 15 feet to the bathroom, and that it could take 20 minutes to two hours before she could walk some more. <u>See</u> AR 126, 130. Further, plaintiff reported that she sometimes hurt too much to shower or bathe, such that she might not do so for as many as three days. <u>See</u> AR 126-27.

Plaintiff argues the ALJ erred as well in discounting her credibility, because the transcript of the hearing reveals the ALJ's frustration with her counsel and her style of testifying as well as the ALJ's "pre-conceived notions," all of which interfered with his ability to elicit fairly and fully information from her at that hearing. ECF #20, p. 6.  But although the hearing transcript reveals, for example, that the ALJ may have had to repeat some questions in an attempt to obtain certain information he was seeking from plaintiff, it does not clearly demonstrate the existence of frustration or pre-conceived notions on the ALJ's part, let alone at a level that would demonstrate impermissible bias. <u>See</u> AR 39-49.  Indeed, it is not at all clear what the "pre-conceived notions" are to which plaintiff refers, and the mere expression of frustration alone is not sufficient to show an improper lack of objectivity by the ALJ:

> ALJs are presumed to be unbiased.  Such presumption "can be rebutted by a showing of conflict of interest or some other specific reason for

REPORT AND RECOMMENDATION - 16

disqualification. . . . But expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display[,] do not establish bias." That the ALJ questioned some of [the claimant's] arguments and the perspective of some of those who treated him plainly does not show bias in this sense.

Valentine v. Commissioner Social Security Administration, --- F.3d ---, 2009 WL 2138981 *3 (9th Cir.) (internal citations omitted); see also Schweiker v. McClure, 456 U.S. 188, 195-96 (1982) (noting that hearing officers deciding social security claims are presumed to be unbiased, that this presumption "can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," and that burden of establishing disqualifying interest "rests on the party making the assertion").

The ALJ did provide one valid reason for discounting plaintiff's credibility. Namely, he noted that the medical evidence in the record did not support the extent of physical and mental limitations plaintiff had alleged. See AR 17. A finding that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Here, other than as discussed above in regard to the evidence in the record concerning plaintiff's allergies, the ALJ properly rejected the medical evidence indicating mental or physical symptoms and limitations more severe than those adopted by the ALJ.

A claimant's pain testimony, however, may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that

while Bunnell was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well). Accordingly, because, as discussed above, none of the other reasons for discounting plaintiff's credibility the ALJ gave were valid, this stated basis for finding her to be not fully credible is insufficient. The undersigned therefore finds the ALJ erred overall in discounting plaintiff's credibility.

III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

A claimant's residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity:

**. . . to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk about six hours in an eight hour workday,**

**and sit about six hours in an eight hour workday. The claimant can perform simple, repetitive tasks with occasional interaction with co-workers and no contact with the general public.**

AR 16 (emphasis in original). Plaintiff argues this assessment is erroneous given all of the above alleged errors in evaluating the medical evidence in the record and in discounting her credibility. The undersigned agrees that because, as discussed above, the ALJ failed to properly evaluate the medical evidence in the record concerning plaintiff's allergies and failed to present valid reasons for discounting her credibility, it is not at all clear that the RFC assessed by the ALJ completely and accurately accounts for all of her functional limitations.

IV.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 50. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 49-51. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 19-20.

Given the above errors committed by the ALJ in evaluating the medical evidence in the record concerning plaintiff's allergies, in discounting her credibility and therefore in assessing her residual functional capacity, once more it is far from clear that the hypothetical question the ALJ posed to the vocational expert accurately describes all of plaintiff's functional limitations. As noted above, defendant argues the ALJ's error in failing to properly consider the evidence in the record regarding plaintiff's allergies is harmless, asserting that there is no evidence that the jobs of cannery worker, garment sorter and housekeeper identified by the vocational expert that plaintiff could perform (see AR 50-51), would require exposure to those substances to which she is allergic.

Again, however, it is entirely possible, if not likely, that an individual performing the jobs identified above would come into contact with such common items as rubber, leather, adhesives or disinfectants, and defendant has the burden of showing such contact would not occur at a level that would preclude such performance. Rather, also as noted above, at least one medical source in the record concluded that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and the like, and another has advised her to strictly avoid those products

that contain chemicals to which she is allergic. See AR 423, 442. The "[i]nability to tolerate dust or fumes," furthermore, is an example of an environmental restriction that is "not factored into" the Grids, thereby requiring additional evidence from a vocational expert. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)).[6] But because the hypothetical question the ALJ posed to the vocational expert at the hearing did not contain any environmental limitations relating to plaintiff's allergies, the vocational expert did not address this issue, and thus such additional evidence is absent.

V.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the

---

[6] The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). As such, if the claimant "has significant non-exertional impairments," then reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids); 20 C.F.R. § 404.1569a(c)(1), § 416.969(c)(1) (non-exertional limitations affect claimant's "ability to meet the demands of jobs other than the strength demands").

REPORT AND RECOMMENDATION - 21

claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's allergies, her credibility, her residual functional capacity, and her capability of performing other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant for further administrative proceedings.

Plaintiff argues that if proper consideration is given to her testimony and to the opinion of Dr. Kim, remand for an outright award of benefits is warranted. As discussed above, though, the ALJ did not err in discounting Dr. Kim's opinion. It is true that remand for an award of benefits is required where the ALJ's stated reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Ninth Circuit in Connett went on to state, however, that it was "not convinced" the "crediting as true" rule was mandatory. Id.

Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears courts "have some flexibility in applying" the "credited as true" rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "credited as true" rule, but noting its contrary holding in Connett).[7] In this case, given that the ALJ largely did not err in evaluating the medical evidence in the record, and that the portion thereof that the

---

[7] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

ALJ found credible for the most part is inconsistent with plaintiff's allegations of total disability, it is far from clear that the ALJ would be required to determine plaintiff disabled if her subjective complaints were credited as true. Accordingly, the undersigned declines to do so.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 27, 2012**, as noted in the caption.

DATED this 6th day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23